

**Signed and Filed: November 02, 2005**

_____
**THOMAS E. CARLSON
U.S. Bankruptcy Judge**

**DO NOT PUBLISH**

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br>NICHOLAS JAMES FETHEROLF,<br><br>        Debtor.<br>_____<br>KATHLEEN A. SMITH,<br><br>        Plaintiff,<br>  vs.<br><br>NICHOLAS JAMES FETHEROLF,<br><br>        Defendant.<br>_____ | Case No: 04-31106 TEC7<br><br>Chapter 7<br><br><br><br>Adv. Proc. No. 04-3177 TEC7 |

**MEMORANDUM OF DECISION**

    This action came to trial on October 5, 2005. Mark K. Oto appeared for Plaintiff. Defendant appeared <u>in pro per</u>. Plaintiff seeks the denial of Defendant's discharge and a determination that Defendant's obligation to her is nondischargeable. For the reasons stated below, I determine that Defendant should not be denied a

MEMORANDUM OF DECISION     -1-

discharge, but that Defendant's obligation is nondischargeable to the extent of $11,000, the value of collateral that Defendant converted to his own use.

**FACTS**

Plaintiff Kathleen A. Smith loaned Defendant Fetherolf $61,000 in February 2001. Plaintiff's daughter, Penelope, was Defendant's girlfriend at the time. Defendant used the money to start a computer supply business. Penelope worked in the business keeping books, preparing checks for payment, and doing other office work.

The loan was memorialized in a promissory note ("the Note"). The Note recites "[s]ecurity given on the loan is (1) 2000 Chevy Astro, (2) 1993 Acura Legend and (3) 1996 Honda." Debtor actually owned two Chevy Astros at the time, but all witnesses agree that the parties intended that security interest attach to the van he then owned free and clear (VIN ...47). It is undisputed Defendant also owned the Acura and the Honda free and clear at the time he signed the Note and received the loan proceeds. Defendant did not give Plaintiff the pink slips for the three vehicles at the time he signed the Note.

Defendant incorporated the computer supply business as Remedy Computers Inc. (the Corporation). The Corporation earned only small profits between the time of its inception in early 2001 and the time both the Corporation and Defendant filed chapter 7 petitions on April 22, 2004. Penelope testified that Defendant spent all the profits that the Corporation did earn on his personal living expenses.

Defendant made numerous payments on the Note. Under the terms of the Note, no payments were called for until March 2002.

**MEMORANDUM OF DECISION** -2-

Defendant made payments from March through October 2002, and in April, May, and June 2003.

In February 2003, Penelope gave birth to a child fathered by Defendant. In June 2003, Penelope left Defendant. Penelope and Defendant have been engaged in a bitter child custody dispute ever since. Defendant made no payments on the Note after June 2003.

Shortly after she made the loan, Plaintiff began to ask Defendant for the pink slips to the three vehicles that secured the loan. Defendant never provided the pink slips to her, although they were readily available.

In June 2002, Defendant sold the Acura Legend for $4,000. Although this vehicle was identified as collateral for the Note, Defendant neither paid the proceeds to Plaintiff, obtained Plaintiff's permission to keep the proceeds, nor provided Plaintiff replacement collateral.

In June 2003, Defendant sold the 2000 Astro Van (VIN ...47) for $7,000. Although this vehicle was also collateral identified in the Note, once again Defendant neither paid the proceeds to Plaintiff, obtained her permission to keep the proceeds, nor provided Plaintiff replacement collateral.

By early 2004, Defendant found himself in substantial financial difficulty. The Corporation had never earned significant profits. He lost important office help when Penelope left him. The custody dispute also created a significant burden. Defendant first contacted bankruptcy attorney Adam C. Kent in February or March 2004. Both Defendant and the Corporation filed chapter 7 petitions on April 22, 2004.

MEMORANDUM OF DECISION                -3-

Case: 04-03177   Doc# 31   Filed: 11/02/05   Entered: 11/02/05 11:52:22   Page 3 of 11

One or two days before he filed the chapter 7 petition, Defendant sold the second Astro Van (VIN ...95) for $7,000. This van was not collateral for repayment of the Note. Defendant later used the proceeds to pay delinquent payroll taxes owed to the IRS.

Defendant's schedules and statement of financial affairs were inaccurate. In response to a question that asked him to disclose transfers out of the ordinary course of business within the year prior to the April 22, 2004 petition date, Debtor failed to list the June 2003 transfer of the first Astro Van or the April 2004 transfer of the second Astro Van. In Schedule B, which asked him to list all personal property, Defendant failed to list the 1996 Honda motorcycle, which was the third item of collateral to secure repayment of the Note, and which he still held on the petition date. Defendant also failed to list among his assets the proceeds of the sale of the second van, or to disclose any transfer of those proceeds (which were paid to the IRS on or shortly after the petition date).

Defendant's business records are also haphazard. He was unable to produce a general ledger or periodic statements of business operations. His business records consist primarily of bank statements for his business and personal accounts.

In the present action, Plaintiff asserts that Defendant's obligations under the Note should be determined to be nondischargeable under section 523(a)(2), because Defendant induced Plaintiff to make the loan through intentional misrepresentations. More specifically, Plaintiff alleges that Defendant never intended to repay the Note and never intended to give Plaintiff a security interest in the vehicles listed in the Note. Plaintiff also seeks

MEMORANDUM OF DECISION        -4-

to have Defendant denied a discharge on the bases: (1) that Defendant failed to maintain records from which his financial condition can be ascertained; and (2) that Defendant concealed or transferred the three vehicles that constituted Plaintiff's collateral with the intent to delay or defraud creditors.

**ANALYSIS AND DECISION**

1. <u>Fraud in the inducement.</u> I find that Defendant did not fraudulently induce Plaintiff to make the loan. At the time he obtained the loan and signed the Note, Defendant intended to repay the loan and to provide Plaintiff a security interest in the vehicles listed in the Note.

In this regard, I first note that Defendant made a substantial number of payments on the Note, and completely stopped making payments only after Plaintiff's daughter broke off her relationship with Defendant. This break-up did not, of course, excuse the breach of contract, but the payment history clearly suggests that any deliberate decision not to repay occurred after Defendant obtained the loan.

I also note that Defendant did provide Plaintiff a security interest in the three vehicles. I find that the language in the Note was sufficient by itself to grant a security interest. See <u>Nolden v. Plant Reclamation (In re Amex-Protein Devel. Corp.)</u>, 504 F.2d 1056, 1058-60 (9th Cir. 1974). It is undisputed that the other requisites for the attachment of a security interest also existed at the time the loan was made: Plaintiff had advanced funds to Defendant, and Defendant owned the vehicles. See Cal. Comm. Code § 9203(a),(b). Defendant's failure to provide Plaintiff the pink slips did render Plaintiff's security interest unperfected and

**MEMORANDUM OF DECISION**           -5-

therefore vulnerable to the claim of a good faith purchaser. This unperfected security interest was, however, still enforceable between Plaintiff and Defendant. See Cal. Comm. Code § 9201(a).

The evidence also shows, however, that Defendant willfully and maliciously failed to pay the Plaintiff the proceeds from the 2002 sale of the Acura Legend, and from the 2003 sale of the Astro Van. I find that Plaintiff had a property interest in these proceeds. See Cal. Comm. Code §§ 9203, 9306. I find that Defendant knew Plaintiff had such an interest. I find that Defendant acted with the subjective intent of depriving Plaintiff of her interest in these proceeds. In so finding, I note that starting sometime after he received the loan, Defendant refused Plaintiff's repeated requests for the pink slips. Possession of the pink slips would have enabled Plaintiff to obtain the proceeds of any sale. I also note that the second failure to turn over the sale proceeds occurred just after Plaintiff's daughter left Defendant. Defendant also stopped making payments on the Note at this time. These circumstances suggest that the failure to pay over the proceeds of sale represented a deliberate decision never to pay Plaintiff the value of the collateral, rather than an inability to pay or an intent to pay at a later date.

Thus, I find that Defendant is liable for conversion of the $11,000 proceeds of the two sales noted above, and that this obligation is nondischargeable under section 523(a)(6) of the Bankruptcy Code.[1] Because of Defendant's insolvency and the fact

---

[1] The complaint did not allege conversion of the collateral as a basis for nondischargeability, but instead alleged more generally that Defendant never intended to perform the security agreement. The complaint did allege transfer or concealment of the collateral with the intent to defraud creditors in general as a basis for denial of discharge. For the reasons set forth below, I determine

**MEMORANDUM OF DECISION** -6-

that the conversion consisted of a failure to pay cash proceeds of a sale in satisfaction of a debt, I determine that punitive damages are not appropriate.

Plaintiff is also entitled to enforce her security interest in the motorcycle still held by Defendant. The chapter 7 trustee never attempted to avoid Plaintiff's unperfected security interest. As noted earlier, the unperfected security interest is fully enforceable between Plaintiff and Defendant. Cal. Comm. Code § 9201(a).

2. <u>Denial of discharge.</u> Defendant should not be denied a discharge under section 727(a)(3) on the basis that he failed to preserve records from which his financial condition can be ascertained. Defendant's business records are not exemplary. But we must remember that Defendant is not well-educated, and that he ran a small business. More important, the records are sufficient for the core purpose of determining whether Defendant had withheld assets from creditors. The bank records are sufficient to show that he did not divert cash or other assets from the business and his creditors. Moreover, Plaintiff's own evidence explains the financial condition of Debtor and his wholly owned Corporation at the time of bankruptcy. Plaintiff's daughter testified that the Corporation earned only small profits and that Defendant spent those profits promptly on living expenses. Finally, the state of Defendant's records reflects a general sloppiness, rather than Defendant's attempt to cover his tracks.

---

that the transfer of the collateral is not a basis for denial of discharge. I determine that the complaint should be amended to conform to the evidence at trial. See Fed. R. Civ. P. 15(b) and Fed. R. Bankr. P. 7015.

**MEMORANDUM OF DECISION** -7-

Although it is a closer question, Defendant also should be not denied a discharge on the basis of the inaccuracies in his schedules and statement of financial affairs. Defendant's failure to disclose his sale of the second van and his failure to list the Honda motorcycle or the van sale proceeds in his schedules may have been willful, but the omissions were not fraudulent. In this context, a misstatement in fraudulent only if "made with the intention and purpose of deceiving the creditors." Roberts v. Erhard (In re Roberts), __ B.R. __, 2005 WL 2508144 at 6 (9th Cir. BAP 2005).

The circumstances suggest that neither Defendant's failure to disclose the sale of the second van, nor his failure to list the motorcycle or van sale proceeds among his personal property were intended to deceive his creditors. First, Defendant had no motive to do so. Defendant could easily have exempted both the motorcycle and van sale proceeds using his wild-card exemption.[2] Nor was he hiding these assets from secured creditors against whom the exemption would be ineffective. The van proceeds were not encumbered. The motorcycle was encumbered by Plaintiff's lien, but she already knew Defendant still had that motorcycle. Second, Defendant is not well-educated (he left school after the ninth grade) and the overall manner in which he kept records and

---

[2] The wild-card exemption available to Defendant was $17,425. See Cal. C.C.P. § 703.140(a), (b)(1). Defendant had used only $3,000 of that amount in his schedule C. The van sale proceeds ($7,000) and the value of the motorcycle ($1,000) total less than the unused wild-card exemption ($14,425).

**MEMORANDUM OF DECISION** -8-

completed his bankruptcy papers evinces a general carelessness, rather than any intent to conceal specific facts.[3]

There is also no reason to believe Defendant's failure to list the June 2003 transfer of the first van was fraudulent. The only creditor who could be affected by that transfer was Plaintiff, and Defendant knew Plaintiff would never be deceived by his failure to disclose that transfer. Plaintiff knew she had a security interest in those vehicles and would inevitably demand surrender of her collateral or its proceeds.

Finally, Defendant should not be denied a discharge on the basis of his conversion of Plaintiff's collateral. Defendant did not sell the collateral with the intent to hinder, delay, or defraud creditors in general. The sales were at arms-length and the proceeds were retained and used by Debtor. The failure to pay the sale proceeds to Plaintiff was wrongful toward Plaintiff specifically, not an injury to creditors as a whole, and should be analyzed under section 523(a)(6), as the court has done above.

**CONCLUSION**

Plaintiff made a risky loan to her daughter's boyfriend to help him start a business. Defendant demonstrated his original intent to repay that loan by making payments fairly regularly until Plaintiff's daughter left him. Plaintiff's own evidence shows that Defendant consumed contemporaneously all the profits that the Corporation created and, thus, Defendant's haphazard business

---

[3] Defendant did not list in his statement of financial affairs the transfer of the van sale proceeds to the IRS, but the evidence suggests that he made that transfer postpetition. It appears that Defendant bought a cashiers check on the same day he filed his bankruptcy petition. It is more likely than not that the IRS received this check postpetition. Thus, Defendant would not think of this as a prepetition transfer to be disclosed.

**MEMORANDUM OF DECISION** -9-

records and bankruptcy papers do not serve to hide assets from his creditors. Plaintiff complains legitimately that she should have received her collateral upon Defendant's default. The judgment of this court restores to Plaintiff the value of that collateral.

**\*\*END OF MEMORANDUM\*\***

**Court Service List**

Mark K. Oto, Esq.
Law Offices of Mark K. Oto
255 N Market Street, #260
San Jose, CA 95110

Nicholas James Fetherolf
2995 Woodside Rd. #400
Redwood City, CA 94062

E. Lynn Schoenmann
800 Powell Street
San Francisco, CA 94108

Office of the U.S. Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104